UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------
                                x

ZHERKA

                           Plaintiff,

                  – against –

RYAN, et al.,

                        Defendants.

---------------------------------------------
                                x

13-CV-3940 (TPG)

**<u>OPINION</u>**

Plaintiff Selim Zherka filed this *Bivens* action claiming that employees of the Internal Revenue Service hindered his application for tax exempt status and initiated an investigation against him as part of a broader effort to penalize members of the Tea Party for their political activities. Defendants have filed motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1),(5), and (6). For the following reasons, defendant Lerner's motion to dismiss is granted. Defendants Ryan and Ashcroft's motion to dismiss is denied.

<u>The Complaint</u>

Beginning in 2009, plaintiff published newspaper articles and held rallies criticizing government officials for political corruption and "confiscatory tax policies." Plaintiff organized and supported the creation of the Tea Party, a political party that received extensive publicity in the news media. At some point, plaintiff sought tax-exempt status for an

organization he and others used primarily for educational purposes. However, plaintiff claims that defendant Lois Lerner ("defendant Lerner"), an IRS employee, subjected his application to an inordinately high level of scrutiny, forcing him to abandon his efforts to obtain tax-exempt status.

Plaintiff alleges that in 2011, agent Ryan of the Federal Bureau of Investigation[1] ("defendant Ryan") and agent Ashcroft ("defendant Ashcroft") of the IRS began an investigation into his commercial real estate dealings. Plaintiff claims these defendants issued over 75 subpoenas to his business associates, threatening them with criminal prosecution should they withhold information incriminating plaintiff. Plaintiff alleges that as a result, many of these business associates terminated their relationship with him out of a fear of "running asunder of federal agencies." He asserts that defendants' conduct was part of a broader government strategy to penalize Tea Party members for their political speech.

Plaintiff claims to have lost business as a result of the ongoing investigation. Moreover, he claims that defendants' actions have chilled his political activities, damaged his reputation, and caused emotional injuries. Plaintiff brings this *Bivens* action asserting five causes of action arising under the First Amendment, Fifth Amendment, and Fourteenth Amendment. Plaintiff served defendants Ryan and Ashcroft with a copy of

---

[1] As discussed below, the court takes judicial notice of the fact that agent Ryan was and at all times has been employed by the Internal Revenue Service, not the Federal Bureau of Investigation.

the summons and complaint within the periods allowed by the Federal Rules of Civil Procedure. However, he never served defendant Lerner with a copy of the summons and complaint.

Discussion

## A. Whether to Grant Defendant Lerner's Rule 12(b)(5) Motion to Dismiss for Insufficiency of Process.

Federal courts lack jurisdiction over a defendant unless the procedural requirement of service of summons has been satisfied. Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987). "If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The court may extend the time for service for good cause. Id. In determining whether good cause exists, the court will consider whether "the plaintiff was diligent in making reasonable efforts to effect service, including but not limited to whether plaintiff moved under FRCP 6(b) for an extension of time in which to serve the defendant." AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P., 197 F.R.D. 104, 108 (S.D.N.Y. 2000).

The court must look to matters outside the complaint in determining whether it has personal jurisdiction. Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003). It is the plaintiff's burden to prove that service was adequate. Burda Media, Inc. v. Viertel, 417 F.3d 292, 298–99 (2d Cir. 2005). A plaintiff satisfies this burden by making a *prima facie*

showing, through specific allegations and supporting materials, that service was proper. Kwon v. Yun, No. 05–CV–1142, 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006). "However, conclusory statements are insufficient to overcome a defendant's sworn affidavit that he was not served." Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). Service of process on an attorney not authorized to accept service for his client is ineffective. Santos v. State Farm Fire & Cas. Co., 902 F.2d 1092, 1094 (2d Cir. 1990).

The defense of insufficient service of process may be waived. Fed. R. Civ. P. 12(h)(1). A party waives the defense by failing to assert it promptly by motion or in the responsive pleading, or by participating in the litigation without questioning personal jurisdiction. Id.; Datskow v. Teledyne, Inc., Cont'l Products Div., 899 F.2d 1298, 1303 (2d Cir. 1990). Merely making a general appearance before the court will not constitute a waiver of the defense so long as the party makes a timely challenge to the court's jurisdiction. Grammenos v. Lemos, 457 F.2d 1067, 1070 (2d Cir. 1972) ("The need to file a special appearance in order to object to jurisdiction or venue has vanished. A party can file a general appearance and object to personal jurisdiction or venue at any time before the answer is filed or in the answer.").

Plaintiff has not satisfied its burden of showing that it served defendant Lerner with a copy of the summons and complaint. Plaintiff filed the First Amended Complaint on December 20, 2013. Dkt. #5. Four days

earlier, plaintiff emailed Alicia Simmons, an Assistant United States Attorney, to ask whether she would accept service of the First Amended Complaint on defendant Lerner's behalf. Simmons Decl. ¶ 2. Simmons responded that she had not yet been authorized to represent Lerner, and could not accept service on her behalf. Id. ¶ 4. This email exchange is the sole example of plaintiff's efforts to effect service of process. As of July 21, 2014, plaintiff had still not served defendant Lerner with a copy of the summons and complaint. Lerner Decl. ¶ 2.

Plaintiff now argues that defendant Lerner waived service because Assistant United States Attorney Simmons entered an appearance on her behalf and filed the instant motion to dismiss and supporting papers. Pl's. Brief. Opp. Def. Lerner's Mot. Dismiss at 6. Ostensibly, plaintiff suggests that defendant should have made a special appearance, instead of a general appearance, to challenge the sufficiency of service of process. See id. However, Simmon's general appearance on defendant Lerner's behalf did not constitute waiver of the defense, since defendant Lerner has consistently, in each of her filings before the court, challenged the sufficiency of process. See Grammenos, 457 F.2d at 1070; see also dkts. 22; 27; 28.

Plaintiff has offered no materials showing that defendant Lerner has participated in the litigation. While defendant Lerner filed the instant motion to dismiss, she did so expressly to challenge this court's jurisdiction. Indeed, all of defendant Lerner's papers on the motion are

prefaced with a challenge to this court's jurisdiction. <u>See</u> Mem. Law. Supp. Def. Lois Lerner's Mot. Dismiss at 4; <u>see also</u> Reply Mem. Further Supp. Lerner's Mot. Dismiss at 1 ("Plaintiff's claims against Lerner should be dismissed . . . for his failure to serve the First Amended Complaint on Lerner.").

As of this writing, it has been a full 277 days since plaintiff filed the First Amended Complaint. Plaintiff has not shown, through any supporting materials, that he ever served defendant Lerner with a copy of the summons and First Amended Complaint. Moreover, Plaintiff has made no request for an extension of time pursuant to Federal Rule of Civil Procedure 6(b), much less argued that his delay in effecting service of process was for good cause. Consequently, this court lacks personal jurisdiction over defendant Lerner and her Rule 12(b)(5) motion is granted. Counts one and two of the First Amended Complaint are dismissed.

### B. Whether the Doctrine of Sovereign Immunity Bars Plaintiff's Claims.

Defendants Ryan and Ashcroft argue that they are immune from suit in their official capacities under the doctrine of sovereign immunity. The United States, as sovereign, is immune from suit except where it consents to be sued. <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 475 (1994). "The terms of the United States' consent to be sued in any court defines that court's jurisdiction to entertain the suit." <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980). A suit against federal officials acting in their official capacities is essentially a suit against the United States, and is thus

barred by sovereign immunity. <u>Robinson v. Overseas Military Sales Corp.</u>, 21 F.3d 502, 510 (2d Cir. 1994). However, sovereign immunity will not shield federal officials from judicial scrutiny where they committed constitutional torts in their individual capacities. <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388, 397 (1971). Thus, claims against federal employees acting in their official capacities will be dismissed outright, but claims against federal officials acting in their individual capacities will be evaluated on the merits. <u>See</u> <u>Robinson</u>, 21 F.3d at 510.

Plaintiff does not specify in the First Amended Complaint whether he brings his claims against defendants in their official or individual capacities. Plaintiff claims that defendants Ryan and Ashcroft served more than 75 subpoenas on his business associates and threatened them with criminal prosecution if they failed to cooperate in a criminal investigation against him. FAC ¶¶ 20, 26. While it could be argued that this conduct flowed from defendants' official duties, the First Amended Complaint seeks damages against defendants personally. FAC at 12.

Defendants are correct in arguing that they are immune from suit in their official capacities. Nevertheless, it is well established that federal officials are not immune when sued in their personal capacities. Because the First Amended Complaint is ambiguous in this regard, the court will construe plaintiff's claims as applying to defendants Ryan and Ashcroft in their individual capacities, and address the merits of the motion to dismiss.

**C. Whether Plaintiff's Claims are Cognizable in a *Bivens* Action.**

Defendants argue that plaintiff's First and Fifth Amendment claims are not cognizable in a *Bivens* action. While Section 1983 of Title 42 of the United States Code creates a cause of action against state officials for their constitutional torts, there is no such statutory cause of action against federal officials. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009). However, in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, the Supreme Court recognized an implied cause of action for damages against federal officers for violations of Fourth Amendment rights. <u>Id.</u> Since implied causes of action are disfavored, the Supreme Court "has been reluctant" to expand *Bivens* to new contexts, <u>id.</u>, doing so only for violations arising under the Due Process Clause of the Fifth Amendment and the Eighth Amendment. <u>Wilkie v. Robbins</u>, 551 U.S. 537, 549 (2007). The Supreme Court has expressly recognized *Bivens* claims arising under the equal protection component of the Due Process Clause of the Fifth Amendment. <u>See</u> <u>Davis v. Passman</u>, 442 U.S. 228, 245 (1979).

The case law is unsettled as to whether *Bivens* applies to retaliation claims under the First Amendment. In *Hudson Valley Black Press*, the Second Circuit considered whether to allow a First Amendment cause of action against Internal Revenue Service officials who audited a newspaper publisher in retaliation for printing an article highly critical of the IRS. <u>Hudson Valley Black Press v. I.R.S.</u>, 409 F.3d 106, 107 (2d Cir. 2005). The Court declined to do so, reasoning that: (1) Congress had already enacted

a comprehensive statutory scheme to challenge improper tax audits, including creating a civil cause of action for damages under the "Taxpayer Bill of Rights;" and (2) Congress had considered, but ultimately rejected, proposals to hold IRS agents liable for damages in their individual capacities. Id. at 111–13. The Court stated: "today we join our sister circuits and hold that *Bivens* relief is not available to taxpayers who allege First Amendment violations based on retaliatory tax audits." Id. at 113.

Plaintiff points to a later case, *Hartman v. Moore*, to suggest the Supreme Court has recognized First Amendment retaliation claims as cognizable in a *Bivens* action. In *Hartman*, the Supreme Court considered whether the plaintiff could state a claim against United States Postal Service inspectors who initiated investigations against him in retaliation for lobbying Congress to adopt his novel mail-sorting technology. Hartman v. Moore, 547 U.S. 250, 252–53 (2006). There is strong language in *Hartman* suggesting such claims are cognizable. The Supreme Court noted that "as a general matter, this Court has held that the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out . . . . A vengeful federal officer is subject to damages under *Bivens*." Id. at 250. However, the Court decided the case on the narrow issue provided, whether a plaintiff must plead an absence of probable cause to maintain a *Bivens* claim for retaliatory prosecution. Id.

Notably, in <u>Ashcroft v. Iqbal</u>, the Supreme Court assumed, without deciding, that First Amendment claims were actionable under *Bivens*. <u>See Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009). However, the Second Circuit has not recognized a *Bivens* action sounding in the First Amendment. <u>Zielinski v. DeFreest</u>, 12 CIV. 1160 JPO, 2013 WL 4838833, at *9 (S.D.N.Y. Sept. 10, 2013).

In determining whether plaintiff's claims should be cognizable in a *Bivens* action, the court must consider: (1) whether an alternative process exists as "a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages;" and in the absence of such an alternative process, (2) whether special factors counsel hesitation before authorizing a new kind of federal litigation. <u>Wilkie v. Robbins</u>, 551 U.S. 537, 538 (2007). In making this determination, courts must consider all "relevant policy determinations made by the Congress." <u>Bush v. Lucas</u>, 462 U.S. 367, 373 (1983).

The Internal Revenue Code does not provide a sufficiently comprehensive scheme to preclude damages against defendants. While the Internal Revenue Code does allow an applicant for tax exempt status to challenge an adverse decision, 26 U.S.C. §§ 7248–49, it provides no damages remedy except where the IRS wrongfully collects taxes. 26 U.S.C. § 7433. This is not the key inquiry, but it is illustrative. Indeed, while the IRS is overseen by the Treasury Inspector General for Tax Administration as well as the Office of Taxpayer Advocate, <u>Norcal Tea Party Patriots v.</u>

I.R.S., No. 13-CV-341, 2014 WL 3547369, at * 6 (S.D. Ohio July 17, 2014), these offices do not appear well positioned to assist taxpayers in confronting the extraordinary type of conduct plaintiff alleges. The Office of Taxpayer Advocate, while formed to "assist taxpayers resolving problems with the Internal Revenue Service," is meant to "propose changes in the administrative practices of the Internal Revenue Service to mitigate problems" and to "identify potential legislative changes which may be appropriate to mitigate such problems." 26 U.S.C.A. § 7803. It does not appear to be equipped to remedy problems of retaliatory investigation in individual cases. Special factors are also insufficient to preclude plaintiff's claims. While the legislative history of the Internal Revenue Code indicates Congress's desire to create a non-monetary scheme to challenge IRS employee misconduct, Hudson Valley Black Press, 409 F.3d at 112, Congress did not consider, nor could it have considered, the scenario plaintiff has alleged.

In the instant case, plaintiff alleges that defendant Ashcroft is an employee of the Internal Revenue Service and "the person responsible for directing the IRS' investigation of plaintiff." FAC ¶ 3. Plaintiff claims that defendant Ashcroft, with defendant Ryan,[2] issued more than 75

---

[2] Defendant Ryan has filed a declaration stating that he is not employed by the FBI, but rather has been continuously employed by the IRS since 1983. Ryan Decl. ¶ 1. Defendant Ryan's declaration presents the courts with matters outside the pleadings. To consider the declaration, the court would normally be required to convert defendants' motion to dismiss to a motion for summary judgment upon proper notice to the parties. Fed. R. Civ. P. 12(d). However, the court may take judicial notice of certain facts. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). The court may take notice of facts "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of

subpoenas to his business associates to punish him for his political activities. FAC ¶ 20. He alleges that defendants questioned his business associates about his political beliefs, and threatened them with criminal prosecution to induce their cooperation in the investigation. FAC ¶¶ 27–28. The investigation has continued for more than 24 months, chilling plaintiff's political public advocacy in support of the Tea Party. FAC ¶¶ 30; 35. Moreover, as a result of defendants' alleged conduct, plaintiff has experienced a dramatic loss of business. FAC ¶ 22.

These allegations are troubling. Unlike in *Hudson Valley Press*, plaintiff is not alleging a mere retaliatory tax audit, but a retaliatory investigation involving potential criminal sanctions. Defendants' argument that plaintiff's claims are not cognizable in a *Bivens* action ignores the simple fact that constitutional rights, if they are to be rights at all, must have some discernible remedy. Indeed, the Supreme Court in *Hartman*, *Iqbal*, and *Davis* has implicitly recognized claims similar to those asserted here. Leaving plaintiff to pursue administrative remedies through the very agency he asserts has targeted him for retaliatory investigation would be, in essence, no remedy at all. Thus, plaintiff's claims are cognizable in a *Bivens* action.

---

accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998). Defendant Ryan's declaration attesting to his long and exclusive employment with the IRS is unquestionable. Moreover, there are no possible other sources to contradict this assertion. Thus, the court takes judicial notice of the fact that defendant Ryan is employed by the Internal Revenue Service.

**D. Whether Plaintiff Has Sufficiently Stated His Claims.**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. In deciding the motion, the court accepts as true all well-pleaded allegations contained in the complaint and draws all reasonable inferences in favor of the plaintiff. See Twombly, 550 U.S. at 555-56. However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

**1. Counts Three and Four: First Amendment Retaliation and Violation of Equal Protection.**

Plaintiff alleges First Amendment retaliation and denial of the equal protection of the laws. To state a claim for First Amendment retaliation, a plaintiff must show: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Garcia v. S.U.N.Y. Health Sciences Center, 280 F.3d 98, 106–07 (2d Cir. 2001).

To state a claim under the equal protection component of the Due Process Clause, a plaintiff must show that he was treated differently than others similarly situated as a result of intentional and purposeful

discrimination. Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005). The courts will apply a strict scrutiny analysis where the discriminatory treatment was based on the person's exercise of fundamental rights. Windsor v. United States, 699 F.3d 169, 196 (2d Cir. 2012), aff'd, 133 S. Ct. 2675 (2013). Fundamental rights include the freedom of speech guaranteed by the First Amendment, especially speech directed at "the structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes." Mills v. State of Ala., 384 U.S. 214, 218-19 (1966). To satisfy strict scrutiny, the government must demonstrate a compelling need for the differential treatment and show that its actions are narrowly tailored to achieving its objective. Windsor, 699 F.3d at 196.

In the instant case, plaintiff alleges that defendants intentionally targeted him for investigation because of his active membership in a new political party. The First Amended Complaint indicates that defendants initiated their broad investigation solely against plaintiff because of his political efforts, and did not pursue similar investigations against apolitical businesses and taxpayers. FAC ¶ 32. Plaintiff's activities centered on advocating for a reduction in local, state, and federal tax levies. FAC ¶ 8. Plaintiff claims that as a result of his political activities, defendants issued over 75 subpoenas to his business associates, and contacted dozens of them individually in a search for incriminating information. FAC ¶¶ 22–30. Defendants' alleged conduct appears to have significantly damaged

plaintiff's business prospects and "curtailed his public advocacy." FAC ¶ 35.

Plaintiff has made a plausible showing on his First Amendment and equal protection claims. His speech, which is directed at reforming government spending, is clearly protected. He has alleged facts showing that defendants targeted him for a wide-ranging investigation because of this speech, and that he was treated differently than other taxpayers and businessmen who did not espouse anti-taxation beliefs. Thus, plaintiff has pleaded sufficient facts to state a plausible claim for relief on his First Amendment and equal protection claims.

### 2.  Count Five: Plaintiff's Substantive Due Process Claim.

Plaintiff alleges that defendants' conduct is so shocking as to amount to a violation of his substantive due process rights. The Due Process Clause of the Fifth Amendment provides that: "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. "The touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845–46 (1998). In essence, to state a claim under the substantive component of the Due Process Clause, a plaintiff must show that the defendant's misconduct is "conscience shocking, in a constitutional sense." Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992). Only

"the most egregious official conduct" meets this threshold. <u>Sacramento</u>, 523 U.S. at 846.

The question of whether conduct is shocking in a constitutional sense is highly context specific. <u>Bolmer v. Oliveira</u>, 594 F.3d 134, 143 (2d Cir. 2010). In <u>Rochin v. California</u>, the Supreme Court held that the forced pumping of a suspect's stomach was sufficiently shocking to constitute a substantive due process violation. 342 U.S. 165, 172 (1952). However, in <u>County of Sacramento v. Lewis</u>, the Supreme Court held that a police officer's decision to commence a high speed chase of a motorcyclist that resulted in his death did not "shock the conscience." 523 U.S. 833, 118 (1998). Similarly, in <u>Cox v. Warwick Valley Central School District</u>, the Second Circuit affirmed denial of a substantive due process claim against a school administrator who reported unfounded suspicions of child abuse to state officials. 654 F.3d at 271. Likewise, in <u>Lombardi v. Whitman</u>, the Second Circuit affirmed dismissal of the plaintiff's substantive due process claim where federal officials made public statements erroneously indicating that the air at the site of the September 11, 2001 terrorist attacks was safe to breathe. 485 F.3d 73, 85 (2d Cir. 2007).

Here, plaintiff alleges that he has been subjected to more than two years of investigation by defendants. FAC ¶ 30. He claims that defendants have threatened his business associates with criminal prosecution in order to secure their cooperation in the investigation. FAC ¶ 28. Moreover, he claims that defendants have inquired into his political activities and

political affiliations, demonstrating a motivation to retaliate against him for his political speech. FAC ¶ 20. Plaintiff claims that defendants' conduct has severely damaged his reputation and harmed his business relationships. FAC ¶ 22.

These allegations are disturbing and sufficiently shocking to allow plaintiff's claim to go forward. While defendants did not subject plaintiff to forced-stomach pumping or other physical deprivations, they have allegedly investigated him for nearly two years based solely on his political message. Defendants' alleged conduct appears to have jeopardized many if not most of plaintiff's business relationships, causing him dramatic and permanent harm. Given plaintiff's low burden at this stage in the litigation, he has alleged facts egregious enough to shock the conscience in a constitutional sense.

**E. The Outstanding Motion to Withdraw as Co-Counsel.**

There is before the court an outstanding motion by Attorney Jay Goldberg to withdraw as co-counsel for plaintiff. District courts have broad discretion in deciding a motion to withdraw as counsel. <u>Whiting v. Lacara</u>, 187 F.3d 317, 320 (2d Cir. 1999). Courts will consider whether withdrawal is likely to disrupt the prosecution of the suit. <u>Id.</u> They will also consider whether granting withdrawal will jeopardize judicial economy or provide the withdrawing party a mechanism to stall and thus gain a strategic advantage in the litigation. <u>Id.</u>

Here, Attorney Goldberg's withdrawal from the case is not likely to cause disruption. Plaintiff will continue to be represented by co-counsel, attorney Michael Sussman. Moreover, allowing withdrawal of one of plaintiff's attorneys is unlikely to give him a strategic advantage going forward. Consequently, the motion to withdraw is granted.

### Conclusion

For the reasons given above, defendant Lerner's motion to dismiss is granted in its entirety. Defendants Ryan and Ashcroft's motion to dismiss is denied in its entirety. The outstanding motion to withdraw as co-counsel is granted.

This opinion resolves the motions listed as document numbers 6, 19, and 22 in this case.


SO ORDERED

Dated: New York, New York
      September 30, 2014

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/14

- 18 -